AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
SIN-TING MARY LIU, State Bar No. 282884
17 E. Main St., Ste 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 769-304-8933
Email: jrichards@awkolaw.com
       mliu@awkolaw.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMONE WESTERFIELD, | Case No.   3:25-cv-7652 |
| Plaintiff, | Assigned to Hon. |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| L'OREAL USA, INC., | (42 U.S.C. § 6972 – Resource Conservation and Recovery Act) |
| Defendant. | |

## INTRODUCTION

1. This is a citizen suit brought under Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, against Defendant L'Oreal USA, Inc. for violations of hazardous waste regulations.

2. Defendant manufactures over-the-counter acne treatment drug products containing benzoyl peroxide (collectively "BPO Products") for consumer use.

3. Benzoyl peroxide is an over-the-counter topical drug that the Food and Drug Administration ("FDA") has found is Generally Recognized as Safe and Effective (GRASE) in concentrations of 2.5% to 10% for the treatment of acne vulgaris.

4. However, it has been known for decades that benzene, a known human carcinogen, is a potential degradation product of benzoyl peroxide.[1]

5. Benzoyl peroxide may degrade into benzene under certain conditions (such as when exposed to elevated temperatures or stored for long periods of time).

6. Benzene is not intentionally added to BPO Products by the Defendant; rather, benzene is generated as a waste byproduct during production or degradation of benzoyl peroxide. In other words, benzene is produced on site during production of the BPO Products and/or during storage of the Products prior to distribution to consumers.

7. On December 23, 2021, the FDA even reminded "drug manufacturers with a risk for benzene contamination" to test their drugs for benzene. *See* FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs, Dec. 23, 2021. As noted, it has been known for decades that there is a risk for benzene contamination for manufacturers of BPO Products.

8. The EPA classifies waste containing certain levels of toxic substances as hazardous. The EPA classifies benzene as hazardous waste in concentrations greater than 0.5 mg/l (0.5 parts per million or "ppm"). Thus, if waste contains benzene at or above this concentration, the waste exhibits the toxic characteristic.

9. Persons who generate hazardous wastes are required to determine whether those wastes are hazardous wastes within the meaning of RCRA and its implementing regulations. 40 C.F.R. § 262.11. If the wastes are hazardous, the requirements include ensuring that the wastes are properly managed according to RCRA regulations. *Id*.

---

[1] Bollinger JN, et al. 1977. Benzoyl peroxide stability in pharmaceutical gel preparations. J Pharm Sci 66(5):718–722; Kucera K, et al. Evaluation of Benzene Presence and Formation in Benzoyl Peroxide Drug Products. J Invest Dermatol. 2025 May; 145(5):1147-1154.

10. The Defendant has admitted it generates hazardous waste (i.e. benzene) through its act or process of producing BPO Products. This is evidenced by its recent recall of La Roche-Posay Effaclar Duo Dual Action Acne Treatment (Lot MYX46W) (Exp. April 2025). In March 2025, Defendant issued a voluntary recall for this BPO Product "due to elevated levels of benzene." FDA Recall Notice, "Limited number of voluntary recalls initiated after FDA testing of acne products for benzene; findings show a small number of products with elevated levels of benzene contamination," March 11, 2025.

11. Defendant has generated hazardous waste (i.e. benzene) in its production of BPO Products which presents an imminent and substantial danger to human health and the environment.

12. When Defendant produced its now-recalled BPO Product and the benzene-contaminated Product purchased by Plaintiff, which has not yet been recalled, Defendant generated hazardous waste (i.e. benzene) without complying with the RCRA regulations governing hazardous waste generators.

13. Plaintiff seeks injunctive and declaratory relief to abate acts or conditions which Defendant has contributed to or is contributing to which may present an imminent and substantial endangerment to human health and the environment.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to section 7002(a)(1)(B) of the RCRA, 42 U.S.C. § 6972(a)(1)(B), and 28 U.S.C. § 1331 (federal question).

15. Venue is proper in this District under 42 U.S.C. § 6972(a)(1) because this is the district in which the alleged endangerment occurred.

## PARTIES

16. Plaintiff Simone Westerfield is a resident of Oakland, California, who purchased Defendant's La Roche-Posay Effaclar Duo Dual Action Acne Treatment 5.5% in approximately 2023 and 2024 from Walgreens in Burley, California and via Amazon.com.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

One of the BPO Products she purchased, La Roche-Posay Effaclar Duo Dual Action Acne Treatment 5.5% (Lot MYX43W) (Exp. April 2025), was subsequently subjected to independent testing and was shown to contain 261 ppm (260.702 mg/l) benzene, far exceeding the EPA's 0.5 mg/l regulatory level requiring compliance with the RCRA. To date, the La Roche-Posay Effaclar Duo Dual Action Acne Treatment 5.5% Product Plaintiff purchased and tested has not been recalled.

17. Defendant L'Oréal USA, Inc. is a corporation engaged in the manufacture, distribution, and sale of BPO Products in interstate commerce, including within the Northern District of California.

**FACTUAL ALLEGATIONS**

18. Benzoyl peroxide is an active ingredient in BPO Products widely marketed to consumers.

19. EPA has classified benzene as a known human carcinogen for all routes of exposure.

20. Long-term exposure to benzene may present an imminent and substantial endangerment to health or the environment.[2]

21. Similarly, acute (short-term) inhalation exposure of humans to benzene may cause drowsiness, dizziness, headaches, as well as eye, skin, and respiratory tract irritation, and, at high levels, unconsciousness. Chronic exposure is associated with leukemia and other blood disorders.

22. Exposure to liquid and vapor benzene may irritate the skin, eyes, and upper respiratory tract in humans. Redness and blisters may result from dermal exposure to benzene.

23. "Even in trace amounts, benzene is known to pose a health risk from exposure routes that

---

[2] *See* Wang et al., "Long-Term Exposure to Low Concentrations of Ambient Benzene and Mortality in a National English Cohort," Am. J. Respir. Care Med., 209 (2024), pp. 987-994 ("Conclusions: Long-term exposure to low concentrations of ambient benzene significantly increases mortality risk in the general population. Ambient benzene represents a potential threat to public health, and further investigations are needed to support timely pollution regulation and health protection.").

include inhalation, ingestion, dermal absorption, and skin or eye contact."[3]

24. On April 18, 2018, the FDA issued a Health Hazard Evaluation on two over-the-counter topical pain relievers containing benzene. The evaluation sought to assess "the risks associated with the application of the products [at issue] with levels of benzene ranging between 8 ppm to 60 ppm."[4] In its evaluation, the FDA cited the ICH Q3C[5] guidance document in observing that benzene is a solvent listed in the guidance documents as Class 1 and as a human carcinogen. It further noted that "[i]t is unacceptable for the amount of benzene to be more than 2 ppm in this product. The main targets of benzene are the nervous system and the blood forming organs with clinical manifestations occurring years after exposure."[6] The FDA concluded that it is "possible that an individual after repeated exposure to this product [at the levels assessed] could experience increased cancer risk from its use."[7] In describing the "degree of the health hazard associated with use of the product by the population most likely to use it," the FDA marked "Life-Threatening (death has or could occur)."[8] In describing the "degree of the health hazard associated with use of the product by the population most at risk," the FDA marked "Life-Threatening (death has or could occur)."[9]

25. In July 2021, the FDA conducted a Health Hazard Evaluation on "Multiple Aerosol Sunscreen Products" manufactured by Johnson & Johnson.[10] The evaluation was requested

---

[3] Hudspeth, A., et al., Independent Sun Care Product Screening for Benzene Contamination, Environmental Health Perspectives, 130:3, Online Publication 29 March 2022.
[4] FDA's CDER Health Hazard Evaluation at 2 (April 18, 2018).
[5] The term "ICH" refers to The International Conference on Harmonization (ICH) Q3C Impurities: Residual Solvents guidance (December 1997), at https://www.fda.gov/media/71736/download?attachment.
[6] *Id.* at 5.
[7] *Id.* at 6.
[8] *Id.* at 7.
[9] *Id.*
[10] https://article.images.consumerreports.org/prod/content/dam/CRO-Images-2021/Health/12Dec/FDA_Benzene_in_Sunscreen_Assessment.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

following testing which showed benzene levels ranging "from 11.2 to 23.6 ppm" in Johnson & Johnson's aerosol sunscreen products. Specifically, the agency requested "an evaluation of the likelihood and risks associated with using aerosol sunscreens that contain benzene 11.2 to 23.6 ppm," which "levels exceed the guideline value provided by ICH [Q3C] and USP[11]" limits, states the report. The evaluation concluded that serious adverse effects, including potential for "life-threatening" issues or "permanent impairment of a body function" were "likely to occur" at exposure levels within that range. In addition, the evaluation stated that "individuals with altered skin absorption (i.e., infants, elderly, broken skin) and individuals who are exposed to benzene from other sources . . . may be at greater risk."

26. By failing to implement proper production practices, there is a clear exposure pathway for distribution to consumers of these benzene-contaminated BPO Products, resulting in imminent and substantial endangerment and risk of harm to human health and the environment.

27. In addition, the presence of benzene in consumer products that are recommended to be applied to the skin 1-3 times daily followed by rinsing thoroughly such as the BPO Products at issue, enter the waste stream and create an imminent and substantial endangerment to public health and the environment.

28. The use and disposal of these products contributes to benzene contamination of municipal solid waste systems, groundwater, and surface water.

29. Plaintiff provided the required 90-day notice of intent to sue to pursuant to 42 U.S.C. § 6972(b)(2).

**CLAIMS FOR RELIEF**

---

[11] The term "USP" refers to United States Pharmacopeia (USP) Residual Solvents, at https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/generalChapter467Current.pdf.

**COUNT I**
(Violation of RCRA, 42 U.S.C. § 6972(a)(1)(B))

30. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

31. Under the RCRA, a "generator" of hazardous waste "means any person, by site, whose act or process produces hazardous waste identified or listed in part 261 of this chapter or whose act first causes a hazardous waste to become subject to regulation." 42 U.S.C.A. § 260.10.

32. Benzene is listed in part 261 of the RCRA:

| EPA Hazardous Waste Number | Contaminant | Chemical Abstracts Service Number | Regulatory Level Mg/l |
|---|---|---|---|
| D018 | Benzene | 71-43-2 | 0.5 |

33. In addition, Defendant is a person whose act first caused a hazardous waste to become subject to regulation. In other words, Defendant is a person whose production first caused the non-hazardous waste benzoyl peroxide to become a hazardous waste (i.e. benzene) and thus subject to regulation.

34. Absent meeting all the conditions for exemption, all generators of hazardous waste are subject the applicable independent requirements of the RCRA, including Sections 262.11(a) through (d) (Hazardous waste determination and recordkeeping) and Section 262.13 (Generator category determination). 40 CFR § 262.10(a)(1).

35. The RCRA regulations at 40 CFR § 262.11 require that any person who produces or generates a waste must determine if that waste is hazardous.

36. The RCRA regulations at 40 CFR § 262.13 require that any person who generates a waste must determine its generator category each month—i.e. a very small quantity generator, a small quantity generator, or a large quantity generator.

37. Defendant has not met the conditions for any exemption under the RCRA.

38. Defendant has contributed to and is contributing to the past and present generation of hazardous waste (i.e. benzene) through its production of BPO Products, which may present an imminent and substantial endangerment to health and the environment, without complying with RCRA regulations.

39. Plaintiff is entitled to declaratory and injunctive relief under the RCRA to prevent the further generation of hazardous waste (i.e. benzene) in its BPO Products in violation of RCRA regulations.

## COUNT II
(Preliminary and Permanent Injunction)

40. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

41. Unless restrained by this Court, Defendant will continue to generate hazardous waste (i.e. benzene) in its BPO products without complying with RCRA regulations and make them available for sale to the public, thereby continuing to create imminent and substantial risks to health and the environment. An example of this ongoing violation is the benzene-contaminated BPO Product that was purchased by Plaintiff but not recalled by Defendant.

42. Accordingly, Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant from further generating hazardous waste (i.e. benzene) in its BPO Products in violation of RCRA regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant generates hazardous waste (i.e. benzene) in its production of BPO Products which presents an imminent and substantial endangerment to health and the environment under RCRA;

B. Issue a preliminary and permanent injunction restraining Defendant from generating and storing hazardous waste (i.e. benzene) in its BPO Products in violation of the RCRA regulations;

C. Order Defendant to implement a recall and safe disposal program for all benzene-contaminated BPO Products it has manufactured and sold while in violation of the RCRA.

D. Order Defendant to pay civil penalties for its knowing past and present generation of hazardous waste (i.e. benzene) in its BPO Products in violation of RCRA regulations.

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 6972(e); and

F. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted by:

DATED: September 8, 2025

/s/Sin-Ting Mary Liu
SIN-TING MARY LIU State Bar No. 282884
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main St., Ste 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 769-304-8933
Email: jrichards@awkolaw.com

Attorney for Plaintiff

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF