UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMONE WESTERFIELD, | Case No. 25-cv-07653-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANT'S MOTION TO DISMISS** |
| L'OREAL USA, INC., | Re: Dkt. No. 17 |
| Defendant. | |

Plaintiff sues Defendant under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), for violating hazardous waste regulations. (Dkt. No. 1.)[1]  Defendant moves to dismiss.  (Dkt. No. 17.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on January 14, 2026, the Court GRANTS Defendant's motion.  Because Plaintiff does not plausibly allege the benzene in Defendant's products is discarded material, the benzene is not "solid or hazardous waste" under RCRA.  And because Plaintiff does not plausibly allege Defendant controlled the products at the time of their disposal, Defendant has not "contributed to" the handling, storage, treatment, transportation, or disposal of such waste under RCRA.

**BACKGROUND**

**I.      COMPLAINT ALLEGATIONS**

Around 2023 and 2024, Plaintiff purchased Defendant's La Roche-Posay Effaclar Duo Dual Action Acne Treatment 5.5% from Walgreens and Amazon.  (*Id.* ¶ 16.)  For one of the purchased products (Lot MYX43W) (Exp. April 2025), independent testing showed it contained

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

261 ppm (260.702 mg/L) benzene, but Defendant has not recalled it. (*Id.*)

Defendant "manufactures over-the-counter acne treatment drug products containing benzoyl peroxide . . . for consumer use." (*Id.* ¶ 2). Although the U.S. Food and Drug Administration recognizes benzoyl peroxide as safe and effective in treating acne, benzene is "a potential degradation product of benzoyl peroxide." (*Id.* ¶¶ 3-4.) The U.S. Environmental Protection Agency ("EPA") has classified benzene as a "known human carcinogen for all routes of exposure," and "[l]ong-term exposure to benzene may present an imminent and substantial endangerment to health or the environment." (*Id.* ¶¶ 19-20.)

Although Defendant does not "intentionally add[]" benzene to its benzoyl peroxide products, benzoyl peroxide can degrade into benzene "when exposed to elevated temperatures or stored for long periods of time." (*Id.* ¶¶ 5-6.) So, "benzene is generated as a waste byproduct during production or degradation of benzoyl peroxide" and "is produced on site during production" or "storage" of Defendant's benzoyl peroxide products before their distribution to consumers. (*Id.* ¶ 6.) In addition, because in March 2025 Defendant issued a voluntary recall of La Roche-Posay Effaclar Duo Dual Action Acne Treatment (Lot MYX46W) (Exp. April 2025) "due to elevated levels of benzene," Defendant "has admitted it generates hazardous waste (i.e. benzene) through its act or process of producing" benzoyl peroxide products. (*Id.* ¶ 10.)

Defendant's benzoyl peroxide "products [] are recommended to be applied to the skin 1-3 times daily followed by rinsing thoroughly." (*Id.* ¶ 27.) So, any benzene in Defendant's products "enter[s] the waste stream and create[s] an imminent and substantial endangerment to public health and the environment," and their "use and disposal contributes to benzene contamination of municipal solid waste systems, groundwater, and surface water." (*Id.* ¶¶ 27-28.)

## II.    PROCEDURAL HISTORY

On September 9, 2025, Plaintiff sued Defendant for violating the RCRA by generating hazardous waste without complying with RCRA regulations and seeking declaratory and injunctive relief. (Dkt. No. 1.) Defendant now moves to dismiss. (Dkt. No. 17.)

**DISCUSSION**

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and

United States District Court
Northern District of California

United States District Court
Northern District of California

disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996) (citation omitted). "RCRA's primary purpose [] is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (citing 42 U.S.C. § 6902(b)).

RCRA's citizen-suit provision provides a cause of action for injunctive relief:

> against any person, . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). So, "[t]o state a claim under the citizen-suit provision of RCRA, [the plaintiff] must allege [the defendant] (1) 'has contributed or . . . is contributing to the past or present handling, storage, treatment, transportation, or disposal' (2) 'of any solid or hazardous waste,' (3) 'which may present an imminent and substantial endangerment to health or the environment.'" *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023) (quoting 42 U.S.C. § 6972(a)(1)(B)).

Defendant argues Plaintiff fails to allege (1) Defendant's products constitute "solid or hazardous waste," or (2) Defendant is contributing or has contributed to "handling, storage, treatment, transportation, or disposal" of such waste.

## I.    "SOLID OR HAZARDOUS WASTE"

RCRA defines "hazardous waste" as:

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5). So, hazardous waste must first qualify as "a solid waste or a combination of solid wastes." *Id.*; *see also Am. Mining Cong. v. EPA*, 824 F.2d 1177, 1179 (D.C. Cir. 1987)

3

("Because 'hazardous waste' is defined as a subset of 'solid waste,' . . . the scope of EPA's jurisdiction is limited to those materials that constitute 'solid waste.'" (citing 42 U.S.C. § 6903(5))); *United Techs. Corp. v. EPA*, 821 F.2d 714, 716 n.1 (D.C. Cir. 1987) ("Thus, although all hazardous wastes are solid wastes, not all solid wastes are hazardous wastes.").  And RCRA defines "solid waste" as:

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and ***other discarded material***, . . . but does not include solid or dissolved material in domestic sewage . . .

42 U.S.C. § 6903(27) (emphasis added).  Since Plaintiff does not allege the benzene comes from a waste treatment plant, water supply treatment plant, or air pollution control facility, whether Plaintiff has plausibly alleged Defendant's products produce "a solid waste" turns on whether she has plausibly alleged the benzene constitutes "other discarded material."  She has not.

In *Ecological Rights Foundation v. Pacific Gas & Electric Co.*, 713 F.3d 502 (9th Cir. 2013), the Ninth Circuit elaborated on the definition of "solid waste."  Ecological Rights Foundation brought a RCRA claim against Pacific Gas & Electric Company ("PG&E") based on a wood preservative containing pentachlorophenol ("PCP"), which PG&E applied to its utility poles, and which "leaks, spills, or otherwise escapes from the poles . . . through normal wear and tear, while those poles are in use." *Id.* at 504, 515.  The Ninth Circuit explained how "solid waste" within RCRA includes "waste by-products of the nation's manufacturing processes, as well as manufactured products themselves once they have served their intended purposes and are no longer wanted by the consumer." *Id.* at 515 (cleaned up).  However, wood preservative escaping utility poles was "neither a manufacturing waste by-product nor a material that the consumer . . . no longer wants and has disposed of or thrown away." *Id.*  Instead, when wood preservative "is washed or blown away from utility poles . . . as an expected consequence of the preservative's intended use, [it] has not been 'discarded.'" *Id.* at 516.  And because the wood preservative was not "discarded," it was not "solid waste" under RCRA. *Id.* at 518.

Plaintiff's RCRA claim fails for a similar reason.  Plaintiff alleges she purchased Defendant's product, which Defendant recommends "appl[ying] to the skin 1-3 times daily

United States District Court
Northern District of California

United States District Court
Northern District of California

followed by rinsing thoroughly," and which contained 260.72 mg/L benzene.  (Dkt. No. 1 ¶ 27.)  Upon rinsing, Defendant's product "enter[s] the waste stream."  (*Id*. ¶ 28.)  So, Defendant's product is not a "manufacturing waste by-product" because Defendant did not discard it, dispose of it, or throw it away; instead, Defendant sold it to Plaintiff.  *See Ecological Rts. Found.*, 713 F.3d at 515; *see also United States v. Asrar*, 67 F.3d 309 (Table), 1995 WL 579646, at *2 (9th Cir. 1995) ("[H]azardous waste [i]s 'any material which is disposed of or intended to be disposed of.'"); *Am. Mining Cong.*, 824 F.2d at 1186 (explaining material "destined for beneficial reuse" is not discarded and thus is not waste).  Plaintiff also does not allege the benzene is a material she, as "the consumer[,] . . . no longer wants and has disposed of or thrown away."  *See Ecological Rts. Found.*, 713 F.3d at 515.  Instead, Plaintiff alleges benzene entered the waste stream because she applied and rinsed off Defendant's product, as Defendant recommended and therefore, drawing all reasonable inferences from the allegations in Plaintiff's favor, as an "expected consequence of [the product's] intended use."  *Id.* at 516; *see also id.* (as example, explaining EPA treats munitions left on ground "as not having been 'discarded' through their normal use" of being fired).

Plaintiff has not plausibly alleged the benzene constitutes a solid waste for a second independent reason: RCRA provides "'solid waste' . . . does not include solid or dissolved material in domestic sewage."  42 U.S.C. § 6903(27).  Because Plaintiff alleges benzene enters the waste stream through her rinsing off Defendant's product, presumably into her own domestic sewage, benzene from Defendant's product is excluded from RCRA's definition of "solid waste."  *See Lincoln Properties, Ltd. v. Higgins*, Civ. No. S-91-760DFL/GGH, 1993 WL 217429, at *10-11 (E.D. Cal. Jan. 21, 1993) (explaining "domestic sewage" encompasses "sewage from residential sources"); *Miller v. D.C. Water & Sewer Auth.*, No. 17-CV-0840 (KBJ), 2018 WL 4762261, at *8 (D.D.C. Oct. 2, 2018) (dismissing RCRA claim because "it is clear beyond cavil that the RCRA . . . do[es] not apply to the allegations regarding [household] sewage"), *aff'd*, 790 F. App'x 218 (D.C. Cir. 2019).

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff contends benzene does not enter the waste stream "as an expected consequence of [Defendant's products'] intended use," *see Ecological Rts. Found.*, 713 F.3d at 516, because Defendants did not intend to add benzyne to

the product. But the relevant intent under RCRA is not whether a defendant intended to produce a hazardous substance, but instead whether the alleged waste is the result of the product's intended use, as opposed to the product's being discarded. *See Asrar*, 1995 WL 579646, at *1 ("The intended use of the material thus may determine whether it is waste."); *see also Ecoglogical Rts. Found.*, 713 F.3d at 516 ("EPA's interpretation [of 'discarded'] focuses on whether a product was used as it was intended to be used." (cleaned up)). So, regardless of whether Defendant intended to include benzyne in its product, Plaintiff does not plausibly allege she or Defendant intended to or did discard it, and therefore has not alleged Defendant's product constituted "solid waste."

Although Plaintiff conceded the argument in oral argument, Plaintiff's opposition brief also contends she need not allege Defendant's product is "solid waste" within the meaning of RCRA because the EPA has designated benzene in concentrations exceeding 0.5 mg/L as hazardous. *See* 40 C.F.R. § 261.24. The Court disagrees. 40 C.F.R. § 261.24 merely concludes a "solid waste" with benzene concentration exceeding 0.5 mg/L is hazardous. *See* 40 C.F.R. § 261.24(b) ("A solid waste that exhibits the characteristic of toxicity has the EPA Hazardous Waste Number specified in Table 1 which corresponds to the toxic containment causing it to be hazardous.") (including benzene concentrations exceeding 0.5 mg/L in Table 1). And RCRA and its pursuant regulations all define "hazardous waste" as a subset of solid waste. *See* 42 U.S.C. § 6903(5) ("'[H]azardous waste' means *a solid waste, or combination of solid wastes*, . . . " (emphasis added)); 40 C.F.R. § 262.11(a) ("The hazardous waste determination for each *solid waste* must be made at the point of waste generation . . . " (emphasis added)); *see also Am. Mining Cong.*, 824 F.2d at 1179 ("'[H]azardous waste' is defined as a subset of 'solid waste.'").

Plaintiff cites no case supporting her argument Defendant's product can constitute "hazardous waste" within the meaning of the RCRA without being "solid waste." *See, e.g.*, *Envt'l World Watch, Inc. v. Walt Disney Co.*, No. CV 09-04045 DDP (PLAx), 2009 WL 3365915, at *4 (C.D. Cal. Oct. 19, 2009) ("EPA's regulations provide that solid waste containing chromium is 'hazardous waste,' within the meaning of RCRA, where the chromium exceeds 5 mg/L."); *Gilroy Canning Co., Inc. v. Cal. Canners & Growers*, 15 F. Supp. 2d 943, 944 (N.D. Cal. 1998) (citing California agency's order documenting groundwater contamination and noting "benzene … is

United States District Court
Northern District of California

6

hazardous waste as defined by RCRA"); *Emerald Kalama Chem., LLC v. Fire Mountain Farms, Inc.*, No. C17-5472 BHS, 2019 WL 1040409, at \*2 (W.D. Wash. March 5, 2019) (noting benzene is a "listed" waste under Washington regulations implementing RCRA); *United States v. Mobil Oil Corp.*, No. 96-CV-1432 (JG), 1997 WL 1048911, at \*1 (E.D.N.Y. Sept. 11, 1997) (noting 40 C.F.R. § 261.24 includes benzene).

In addition, at oral argument, Plaintiff stated she is no longer arguing Defendant's product was "discarded" when Plaintiff applied and rinsed off the product; instead, she now argues Defendant "discarded" its product by selling it to consumers. Because Plaintiff did not include this argument in her opposition brief, the Court need not consider it. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) ("We generally do not consider issues raised for the first time during oral argument." (cleaned up)). The Court nevertheless addresses the flaws in Plaintiff's argument in case she seeks to file an amended complaint. As an initial matter, Plaintiff's conclusory allegation the "distribution to consumers . . . result[ed] in imminent and substantial endangerment and risk of harm to human health and the environment" is insufficient to plausibly allege Defendant's sale "may present an imminent and substantial endangerment to health or the environment" under RCRA. (Dkt. No. 1 ¶ 26.) *See Ctr. for Biological Diversity*, 80 F.4th at 950; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, . . . [and] we are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)). Furthermore, Plaintiff does not plausibly allege Defendant "discards" its product by selling it to consumers. *See California River Watch v. City of Vacaville*, 39 F.4th 624, 629 (9th Cir. 2022) ("We said 'discard' means to 'cast aside; reject; abandon; give up.'" (quoting *Ecological Rts. Found.*, 713 F.3d at 515)). Because Defendant produces its products to sell to consumers, Defendant's products are "serv[ing] [their] intended purpose," not being "discard[ed], when Defendant sells them. *Id.* (cleaned up). So, Plaintiff has not plausibly alleged Defendant's products are "solid waste" because Defendant discards them by selling them to consumers.

So, Plaintiff's RCRA claim fails because she does not plausibly allege benzene present in Defendant's products and used in accordance with Defendant's recommendations is a "solid or

hazardous waste" under RCRA.

## II.   CONTRIBUTING OR CONTRIBUTED TO "HANDLING, STORAGE, TREATMENT, TRANSPORTATION, OR DISPOSAL" OF WASTE

"RCRA requires more than just hypothetical control to establish contributor liability." *Ctr. for Biological Diversity*, 80 F.4th at 953. "Rather, the statute requires [actual] 'control over the waste at the time of its disposal.'" *Id.* (citation omitted). So, "to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was actively involved in the waste disposal process." *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011); *see also Ecological Rts. Found. v. PacifiCorp*, 738 F. Supp. 3d 1239, 1255 (N.D. Cal. 2024) ("To state a RCRA claim, a plaintiff must allege that the defendant was 'directly connected' to the waste disposal process—such as shipping waste to hazardous waste treatment, storage, or disposal facilities." (citation omitted)).

Plaintiff also fails to allege facts that support an inference Defendant contributed to the "handling, storage, treatment, transportation, or disposal" of solid waste because she does not allege Defendant controlled the products at the time of their disposal. In *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011), for example, the plaintiffs sued dry cleaning equipment manufacturers because they instructed users to, when operating their machines, "dispose of contaminated waste water in drains and open sewers" and therefore contributed to generating hazardous waste. *See id.* at 849. But the Ninth Circuit affirmed the dismissal of the plaintiff's claim and held "contributing to" required allegations "the defendant had a measure of control over the waste at the time of its disposal or was actively involved in the waste disposal process," so "[m]ere design of equipment that generated waste, which was then improperly discarded by others, is not sufficient." *Id.* at 852. Like in *Hinds Investments, L.P.*, Plaintiff alleges benzene enters the waste stream when she follows Defendant's recommendations in using its products. However, because this disposal occurs after Plaintiff has purchased Defendant's product, Defendant no longer has any "measure of control over the waste" or "active[] involve[ment] in the waste disposal process" and therefore could not contribute to its disposal. *See Hinds Investments,*

*L.P.*, 654 F.3d at 852.

Plaintiff contends *Hinds Investment, L.P.*'s guidance as to a defendant's control applies only to claims based on "contributing to the . . . disposal" of waste, and not her claim, which alleges Defendant's liability as a "generator" of waste involved in its "handling [and] storage." *See* 42 U.S.C. § 6972(a)(1)(B) (allowing suits against "any past or present generator, past or present transporter, or past or present owner or operator . . . who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste").  However, in *California River Watch v. City of Vacaville*, 39 F.4th 624 (9th Cir. 2022), the Ninth Circuit held a defendant's contribution to "'transportation' . . . must also be directly connected to the waste disposal process—such as shipping waste to hazardous waste treatment, storage, or disposal facilities." *Id.* at 633.  So, a city which, by pumping water to city residents, transported hazardous material was not liable under RCRA because the transportation was not "in direct connection with [the city's] waste disposal process." *Id.*  The same reasoning defeats Plaintiff's interpretation of RCRA's parallel "handling" and "storage" terms.  Specifically, Plaintiff alleges Defendant generates benzene through its handling and storage of benzoyl peroxide in its product production, rather than "in direct connection with its waste disposal process," so Defendant "does not have the necessary connection to the waste disposal process to be held liable for ["handling" or "storage"] under § 6972(a)(1)(B)." *Id.*

Plaintiff also argues *California River Watch* is limited to liability for "past or present transporter[s]," and Defendant is a "past or present generator." *See* 42 U.S.C. § 6972(a)(1)(B).  This argument is also unavailing because RCRA provides no reason to treat generators differently from transporters.  Just as RCRA "authorizes the establishment of '[s]tandards applicable to *transporters* of hazardous waste,'" *California River Watch*, 39 F.4th at 631 (quoting 42 U.S.C. § 6923(a)), RCRA authorizes "standards applicable to *generators* of hazardous waste," 42 U.S.C. § 6922. *See California River Watch*, 39 F.4th at 631 (explaining existence of standards show "'transporters' are not those who *happen* to move hazardous waste under any circumstance but only [] those" involved in transportation to waste disposal facilities).  So, Plaintiff must allege Defendant's connection to the waste disposal process as an alleged "generator" of waste just as the

*California River Watch* plaintiffs needed to allege the defendant's connection as an alleged "transporter" of waste.

Plaintiff's RCRA claim therefore fails for the additional reason Plaintiff does not allege facts sufficient to support an inference Defendant "contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal" of waste.  42 U.S.C. § 6972(a)(1)(B).

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss with leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[The] court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)); *cf. Ecological Rts. Found.*, 713 F.3d at 505 (affirming district court's denial of leave to amend when, after "two opportunities to amend its complaint, [] none of [the plaintiff's] proposed amendments would cure the defects in its allegations").

Plaintiff's deadline to file an amended complaint, if any, is **February 5, 2026**.  Plaintiff may not add any new claims, plaintiffs, or defendants without prior leave of court.

This Order disposes of Docket No. 17.

**IT IS SO ORDERED.**

Dated: January 21, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

10